LEMMON, Judge,
dissents and assigns reasons.
The assertion that plaintiff backed up on the exit ramp is inherently improbable, although admittedly not impossible. However, my review of defendant’s own testimony convinces me that she did not really see plaintiff back up, and therefore her own testimony does not support such a conclusion.
The accident occurred at the point where an exit ramp off Causeway Boulevard merges with the eastbound traffic lanes of Jefferson Highway. Darkness had just set *65 in on the clear, dry evening, and the traffic was heavy.
Prior to the collision plaintiff had proceeded south on Causeway, had taken the overpass across Jefferson Highway, and was situated in traffic on the exit ramp, awaiting an opportunity to enter the eastbound stream of traffic on Jefferson Highway. He testified that he “negotiated very carefully” on the ramp, with his foot on the brake, and that when he reached a point fairly close to the highway, with no one in front of him he was suddenly struck from the rear. He did not recall whether he was stopped or in motion at impact, since he was “inching” his way while looking for an entry, but he emphatically denied backing up at any time.
On the other hand, defendant, while admitting that she was going forward at time of impact, also asserted that plaintiff was backing at the time. (p. 8) The following excerpts from her testimony demonstrate that she did not observe such conduct by plaintiff.
Defendant thusly described plaintiff’s conduct as he attempted to enter the stream of traffic (p. 9):
“Well, he kind of — he had slowed and he didn’t really use like an acceleration. He just went out a little bit and then stopped. And then he went out a little bit more, and then he started going in, and then he stopped and came back.”
In relation to this she testified that she was at the very beginning of the acceleration lane and was two or three car lengths behind plaintiff when he first hesitated, and that the last time he stopped or hesitated he actually went out into traffic, whereupon (p. 19):
“When he pulled out, I stayed where I was and I was looking. I saw that he was pulling in traffic, so I looked for the next space, and then I started to pull into traffic. And then I saw him backing up at me and braked, so I was just using it to accelerate in. I wasn’t — like he went out a little at a time. I was just going to go straight into, just use it to speed up and get into the flow of traffic.”[1] (Emphasis supplied)
She further stated that she had seen the opening in traffic that plaintiff was attempting to enter and had also noticed another opening, about six cars behind the first, which she planned to enter. And when asked the interval between the time when she turned back from looking to her left and the time when she saw white lights flash on plaintiff’s car (she identified the flashing of white lights as the first indication that plaintiff was backing up), she answered (p. 23):
“A. It was just, you know, a second or so. I mean, like when I would look sideways and I saw a spot, I just started to accelerate. And as soon as I turned my head forward, I saw the lights and I braked. So just, you known, not even a second.
“Q. So you saw it as soon as you turned back?
“A. Right.
“Q. Could you approximate how long were you turned to the left looking down Jefferson Highway?
“A. Just a couple of seconds.” (Emphasis supplied)
Defendant postulated that plaintiff was backing up because he hadn’t properly timed his entry into the stream of traffic. However, she stated (p. 32-36):
“Q. You weren’t really looking at Mr. Rosenson’s car, were you?
“A. Well, I saw him go into traffic and then I looked at the highway.
“Q. Why were you looking at the highway as opposed to looking at Mr. Rosen-son’s car?
“A. Well, he had his nose enough into the traffic that he was either going to *66 get hit by traffic or get into traffic, so I was looking for the next space.
“Q. You were looking for the next opening?
“A. Yes.
“Q. Now, you said a few minutes ago that you saw an opening. I’m not sure about the number of cars, maybe five or six cars back, that you thought you could fit into. And you also said that you saw an opening that Mr. Rosenson could get into, is that right?
“A. Because I saw him getting into one.
“Q. And there was an opening there?
“A. Well, yeah, he would have made it, just step on the gas enough, he would have been in.”
* * * * * *
“Q. You said that you saw Mr. Rosenson for some time, I think hesitating until he got an opening in traffic, is that right?
“A. Yes.
“And described that you were looking over on the left to look for an opening?
“A. Not then, not until I saw him go into traffic far enough that he had to get in.
“Q. And then you pretty much quit looking at him and looked over to the left?
“A. Yeah.
“Q. And then you were moving forward, and then the next thing you knew, you had this collision, is that right?
“A. Well, I mean, it wasn’t the next thing I knew because I saw what was happening and braked before we actually hit. My foot was on the brake before the cars touched. I have a — I can’t measure things.”
Later, she answered a similar question as follows (p. 54):
“Q. At the time that you looked to the left, where was the nose of his car? “A. I still say it was about a foot and a half into the lane and he was still moving. So I assume by the time I turned around, he should be in the lane.”
Finally, defendant describes the occurrences just before the collision as follows (p. 37-38):
“Q. But right before this accident occurred, you were pretty close to Mr. Ro-senson, weren’t you?
“A. I wasn’t really that close to him. I mean, there was probably a car distance between us, at least.
“Q. At what point was this? At what point was there a car distance?
“A. Right before I started to accelerate. “Q. So you had just about a car?
“A. Yes.
“Q. Now, at this point when there was a car distance between you, is it fair to say at that time that both of you were pretty much stopped?
“A. Yeah.
“Q. And somehow from that car distance apart, your testimony is that Mr. Rosenson started forward and you started forward and then Mr. Rosenson backed up and then you had the collision?
“A. (Witness nods head affirmatively.)
“Q. Now, how fast were you going when you started to accelerate?
“A. Not that fast, only about 35. The speed limit is only about 45, maybe 50.”
The foregoing excerpts of defendant’s own testimony establish her negligence and the implausibility of her statement that plaintiff backed into her. She saw plaintiff begin to move toward an opening in the stream of traffic and turned to her left to look for the next opening; then, erroneously assuming plaintiff had entered the highway, she began to accelerate in the acceleration lane so as to enter the opening she had spotted, but upon returning her attention to the front, she saw to her surprise that plaintiff was still in the acceleration lane. She admitted that she accelerated at a fast speed when she saw plaintiff start into an opening which he should have been able to enter. She admitted that “as soon as” she returned her attention to the front, after looking to the side, she saw that plaintiff was backing up (or stopped) and braked to stop her forward movement. She admitted that she determined plaintiff was backing up because they were “getting closer” *67 (of course, she was moving forward rapidly, after they had both started forward while only about a car length apart) and because she saw a white light flash on plaintiffs car.[2]
In my opinion defendant’s own testimony does not reasonably establish that she actually observed plaintiff perform the improbable- maneuver of backing up on the exit ramp. I would reverse.

. The entire flavor of defendant’s testimony was that plaintiff did not properly use the acceleration lane to accelerate and merge into moving traffic. Perhaps the record bears out the occurrence of this aggravating conduct of motorists unfamiliar with use of acceleration lanes, but this fact does not give a following motorist the right to accelerate in the acceleration lane until the preceding motorist has in fact left that lane.

. There is no evidence that a white light on plaintiff’s car either flashed when the car was in reverse gear or did not flash when the brakes were applied.